**SAVOR, INC., Plaintiff Below, Appellant,**

v.

**FMR CORP., a Massachusetts corporation and UPromise, Inc., Defendants Below, Appellees.**

No. 192,2002.

Supreme Court of Delaware.

Submitted: Sept. 10, 2002.
Decided: Nov. 25, 2002.
Revised: Dec. 18, 2002.

Jeffrey K. Martin, and William M. Aukamp, of Harvey, Pennington, Cabot, Griffith & Renneisen, Ltd., Wilmington, and Howard M. Cyr, III, Michael E. Lignowski (argued), and Paul M. Quinones, of Harvey, Pennington, Cabot, Griffith & Ren-

---

55. *Applebaum,* 805 A.2d at 217.

neisen, Ltd., Philadelphia, PA, for Appellant.

Kevin G. Abrams, and Srinivas M. Raju, of Richards, Layton & Finger, Wilmington, and John D. Donovan, Jr. (argued), and L. Jay Law, of Ropes & Gray, Boston, MA, for Appellee FMR Corp.

Anthony W. Clark, of Skadden, Arps, Slate Meagher & Flom, L.L.P., Wilmington, and James R. Carroll (argued), and Michael D. Blanchard, of Skadden, Arps, Slate, Meagher & Flom, L.L.P., Boston, MA, for Appellee UPromise, Inc.

Before VEASEY, Chief Justice, BERGER and STEELE, Justices.

BERGER, Justice:

In this appeal, we consider whether a complaint seeking relief for misappropriation of trade secrets adequately states a claim. The Superior Court dismissed appellant's third amended complaint, finding that it contained only generalities and conclusory allegations that failed to identify a trade secret. Although the complaint does not describe the purported trade secret in detail, we are satisfied that it meets the minimal standards governing notice pleading. Accordingly, we reverse.

Factual and Procedural Background

In 1994, Savor, Inc. developed what it claims was a unique program under which consumers, when purchasing specified goods and services, would be entitled to cash rebates that would be paid into a State Qualified Tuition Plan (now known as a "529 Plan").[1] In September 1998, Savor's Chief Executive Officer, Dennis A. Doyle, contacted Abram Claude, Vice President of FMR Corp., to solicit FMR's participation in the Savor program. Doyle asked Claude to sign a confidentiality agreement, but Claude declined, claiming that it was against company policy. Claude promised, nonetheless, to respect the secrecy of Savor's information.

Savor sent a package of materials to FMR, under a cover page that stated, "Materials enclosed are protected by various copyrights, patents pending, and trademark registrations." Over the next few weeks, Doyle discussed the details of the Savor program with Claude and other FMR employees. In October, Claude informed Doyle that FMR was not interested in the Savor program.

UPromise was organized in February 2000. Jim Fadule, an UPromise Vice President, is a former FMR employee who worked with Claude and was the "primary author" of FMR's college investment business lines. UPromise is marketing a college investment/rebate program that uses "many of the marketing strategies, methods, techniques and processes" that Savor presented to FMR in 1998. In April 2001, FMR agreed to manage UPromise's 529 Plan assets. According to Savor, both UPromise and FMR are likely to reap substantial economic gain from their involvement in the UPromise program.

Savor filed this action in October 2000 against Fidelity Investment Corporation and UPromise, Inc. The first complaint alleged that appellees misappropriated the "Savor Program," a "unique program whereunder individuals who purchase products and services, with or without the use of credit cards, would receive rebates and rewards that would be paid in cash for the account of a designated beneficiary under a State Qualified Tuition Plan."[2]

1. So-called "529 Plans" are state-run college tuition savings programs that accumulate free of federal taxation pursuant to 26 U.S.C.A. § 529.

2. Original Complaint, ¶ 5.

Based on their alleged involvement in creating a similar UPromise program, the complaint charged appellees with misappropriation of trade secrets, unfair competition, and conspiracy. After Savor amended its complaint twice to correctly identify Fidelity Investment Corporation as FMR Corp., a Massachusetts corporation, FMR and UPromise moved to dismiss the Second Amended Complaint for failure to state a claim. At oral argument, Savor acknowledged that its complaint did not detail the "methods, techniques and processes" that comprise the alleged trade secret, and it offered to provide that additional information in a Third Amended Complaint, if the complaint could be filed under seal.

The Superior Court granted the motion to dismiss. The trial court held that the unfair competition and conspiracy claims failed as a matter of law under 6 *Del.C.* § 2007(a), and that the misappropriation claim failed because the complaint did not adequately allege: (i) the processes that are claimed to be trade secrets; (ii) the basis for Savor's conclusory allegation that FMR agreed to maintain the confidentiality of the trade secrets; and (iii) the basis for Savor's conclusory allegation that FMR used or disclosed those trade secrets. The Superior Court granted Savor's motion to amend and allowed Savor to file its Third Amended Complaint under seal.

Savor's Third Amended Complaint (the "Complaint") deleted the claims for unfair competition and conspiracy, and expanded its allegations in the three areas the trial court found deficient. In Paragraph 6, Savor explained that its "unique program" included "marketing strategies and methods, techniques and processes for extracting payments from program participants,

aggregating the funds until they met any minimum payment requirements under a State Qualified Tuition Plan, and then paying them over to the Plan." The "details" allegedly were contained in 120 pages of material that was attached as Exhibit A and filed under seal. The Complaint also added allegations that Savor presented its program to FMR only after Claude agreed that he would respect the confidentiality of the information he was given. Finally, the Complaint attempted to support its claim that FMR disclosed trade secrets to UPromise by alleging that: (i) Fadule worked with Claude at FMR in the college investing business line; (ii) UPromise has a magazine article bearing a "Confidential" stamp that matches one of the documents Savor provided to FMR; and (iii) many of the marketing strategies and processes in the UPromise program are the same as those that Savor presented to FMR.

Appellees again moved to dismiss, arguing that Exhibit A was nothing more than a collection of publicly available articles, website pages, and "business school basics" about marketing a rebate program. The Superior Court agreed, holding that Savor failed to identify its purported trade secret with sufficient particularity to enable appellees to prepare their defense. The Superior Court did not address whether the Complaint remedied the other pleading deficiencies identified in its earlier decision. This appeal followed.

### Discussion

We review the trial court's decision *de novo*.[3] The standards governing a motion to dismiss for failure to state a claim are well settled: (i) all well-pleaded factual allegations are accepted as true;[4] (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the

---

**3.** *Precision Air v. Standard Chlorine of Del.,* 654 A.2d 403, 406 (Del.1995).

**4.** *Ibid.*

897

claim;[5] (iii) the Court must draw all reasonable inferences in favor of the non-moving party;[6] and (iii) dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[7] The elements of a misappropriation of trade secrets claim also are well defined. A party may obtain injunctive relief and damages against one who acquires, uses or discloses a trade secret obtained through improper means.[8] A trade secret is information that:

a. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[9]

█ Under the liberal notice pleading standards governing this motion, we find that the Complaint adequately states a misappropriation of trade secrets claim. The trade secret is the allegedly unique combination of marketing strategies and processes for the implementation of a program under which consumers would be able to use rebates from their qualified purchases to fund a 529 Plan. Savor alleges that its program was not generally known to, or readily ascertainable by, others and that it described the program to FMR after receiving an assurance that Claude would respect the confidentiality of the information. Finally, Savor alleges that its program has potential economic value to FMR and UPromise.

Appellees say that the Savor Program cannot be a trade secret because it is nothing but a combination of widely known business and marketing techniques associated with rebate programs. If there is something more to Savor's claim, they say that the complaint gives them insufficient information from which to prepare a response. Appellees also contend that Savor's claim must be dismissed because the Complaint itself reveals that Savor failed to take reasonable steps to maintain the confidentiality of its purported trade secret. Finally, they say that the Complaint fails to adequately allege that FMR or UPromise misappropriated the trade secret.

The short answer to these arguments is that, at this stage of the proceedings, Savor gets the benefit of all favorable inferences. Savor alleges that its program was a unique set of marketing strategies and processes that combined consumer rebates with college investment plans. Even if the basic components of the program were well known, as appellees argue, the program still may be a protectable trade secret if it is a unique combination of those components.[10] That determination, along with factual findings about whether Savor adequately protected the confidentiality of its program or whether appellees misappropriated it, cannot be resolved on a motion to dismiss.[11]

5. *Ibid.*

6. *Ramunno v. Cawley,* 705 A.2d 1029, 1034 (Del.1998).

7. *Kofron v. Amoco Chems. Corp.,* 441 A.2d 226, 227 (Del.1982).

8. 6 *Del.C.* Ch. 20.

9. 6 *Del.C.* § 2001(4).

10. *Merck & Co. v. SmithKline Beecham Pharmaceuticals Co.,* 1999 WL 669354 at *15 (Del. Ch.1999), *aff'd.* 766 A.2d 442 (Del.2000).

11. *SmithKline Beecham Pharmaceuticals Co. v. Merck & Co.,* 766 A.2d 442, 448 (Del.2000).

■ Although the Complaint is being reinstated, there remains a question as to the viability of Savor's unfair competition and conspiracy claims. Savor argues that the dismissal of those common law claims was premature because the trial court has not yet determined that a trade secret exists. If Savor fails in its statutory trade secret claims, Savor says that is should be allowed to proceed with its alternative common law claims. The Superior Court held that, because the common law claims are based on the same alleged wrongful conduct as the trade secrets claims, they are precluded under 6 *Del.C.* § 2007, which provides that the Uniform Trade Secrets Act [12] "displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret." The only exceptions to this provision are claims for criminal remedies, contract remedies, and "other civil remedies that are not based on misappropriation of a trade secret...." [13] Savor's common law claims seek civil remedies based solely on the alleged misappropriation of a trade secret. Thus, the Superior Court correctly ruled that Savor's common law claims are precluded. [14]

### Conclusion

Based on the foregoing, the decision of the Superior Court dismissing Savor's Third Amended Complaint is reversed and the decision of the Superior Court dismissing Counts II and III of the Second Amended Complaint is affirmed.

---

**12.** 6 *Del.C.* § 2001 *et seq.*

**13.** 6 *Del.C.* § 2007(b).

**14.** *Savor v. FMR Corp, et al*, Del.Super., C.A. No. 00C–10–249–JRS, 2001 WL 541484, Slights, J. (April 24, 2001).